LEOPARD, The (CLARK v.). See Case No. 2,828.

———

## Case No. 8,265.

### In re LEPPEIN.

[1 Pa. Law J. Rep. 62; 1 Pa. Law J. 223.]

District Court, E. D. Pennsylvania. 1842.

BANKRUPTCY — DISTRESS FOR RENT FALLING DUE AFTER DECREE.

Chattels of a bankrupt remaining, after the decree, on the premises which the bankrupt occupied, are liable to distress; even though the rent fall due after the decree.

Leppein was the assignee of certain bankrupts against whom a decree had passed, on Friday, July 29th. Six days after this decree, but before the property was removed from certain premises, which they rented, the landlord distrained some of the goods for rent, which had fallen due two days after the decree. An affidavit of these facts having been filed by Leppein, the landlord's right

as against the assignee was discussed before the court, on a motion, which had been made by M'Call, for an attachment against the landlord, for contempt. On the hearing of the rule, it was said by M'Call, for his client, that the fifth section of the bankrupt act [of 1841 (5 Stat. 444)] declares, that "all creditors" shall be entitled to share in the bankrupt's effects "pro rata, without any priority or preference whatsoever," except in certain cases mentioned in the act; and among which, that of the landlord is not included. This language was strong; so strong, that the act proceeded to except "liens, mortgages, and other securities," which but for the reservation would be divested by the general words which preceded. Rent, however, was neither "lien," "mortgage" nor "other security." It was a debt, and no way different, and in no way more meritorious than other debts. Now could the court insert in the bankrupt act an exception manifestly excluded by the legislature? Again. The decree "by mere operation of law," divested all the bankrupt property "out of the bankrupt," and vested it in the assignee. This assignee was an agent of this court. The property was in the custody of the law. It was like property seized in execution. In fact a decree of bankruptcy was often called a statutory execution. Now property in the sheriff's hands could not be distrained. The decree fixed all rights. It regulated them justly, and it was important that its equitable and safe operations should not be disturbed by these violent remedies of the feudal law; nor by the dread of them.

W. M. Meredith, for landlord. No part of the bankrupt act gave the assignee greater rights than the bankrupt had before the decree. This question was, however, so well settled that it had passed into text law. "A landlord, having," says Eden (page 303), "a legal right to distrain goods as long as they remain on the premises, neither the issuing of the commission, nor the possession of the messenger, nor even the commissioner's assignment, will deprive him of his legal lien." This was settled by Lord Hardwicke (Ex parte Plummer, 1 Atk. 103), and that decision stood unquestioned. The landlord had his legal rights; the goods were on the premises; they were ordinary goods; and there was nothing in any part of the case, to destroy or to abridge the common law right of distress.

Peter M'Call, in reply, admitted the force of what was said, but remarked, that it was unsafe to rely on such cases as Ex parte Plummer. The report was meager, and the language of the bankrupt act, on which that decision was made, did not appear. Besides, in no part of the common jurisprudence of England and the United States, was the judicial inclination more divergent, than respecting distress for rent. In England, the feudal influences were yet felt. The security of the landed interest, was the security of the kingdom; while here, we were told by the supreme court of Pennsylvania, "that the right to distrain the property of a stranger, rests on no principle of reason or justice." Brown v. Sims, 17 Serg. & R. 138. The same court went still farther in Riddle v. Welden, 5 Whart. 9, and expressed its readiness yet to advance. Other courts had gone as far. See, particularly, Youngblood v. Lowry, 2 McCord, 39. This court was therefore at liberty to carry out the aim and spirit of the bankrupt act, as evidenced by its language already cited.

RANDALL, District Judge, said, briefly, that, notwithstanding Mr. M'Call's argument, he saw nothing to destroy the right of distress, as long as the goods remained on the premises. The assignee could not be in a better condition than a bona fide purchaser. It was accordingly ordered that Leppein should pay the rent, interest, and costs, out of the bankrupt's estate; the value of the property levied on having been more than sufficient for that purpose.